UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| | : |
| v. | : Case No. 24-PO-00011-LDA |
| | : |
| JAMES A. DONNELLY | : |

**DECISION AND ORDER**

**Introduction**

Defendant is charged by Violation Notice with Trespass, i.e., entering a closed shorebird area located on the Moonstone Beach portion of the Trustom Pond National Wildlife Refuge. (ECF No. 2). The trespass allegedly took place on Sunday, June 23, 2024. Defendant appeared as required on August 16, 2024 and pled not guilty. A petty offense bench trial was held on September 23 and October 7, 2024, pursuant to Rule 58, Federal Rules of Criminal Procedure.

Defendant, a retired attorney, represented himself at the trial. The Government presented four U.S. Fish and Wildlife Service ("FWS") employees as witnesses: Ms. Maureen Durkin, a wildlife biologist; Ms. Casey Manera, a shorebird crew lead; Ms. Grace Carew, a shorebird technician; and Mr. Patrick James, a senior wildlife officer. Defendant waived his right to remain silent and testified on his behalf.

**Analysis**

The issue presented is whether the Government has proven beyond a reasonable doubt that Defendant trespassed into a closed shorebird area on June 23, 2024. For the following reasons, I find that the Government has not met its heavy burden of proof in this petty offense prosecution.

The Government has presented competent and credible evidence as to FWS's ownership of the refuge property in question to the "mean high water line" and that FWS has the legal authority to, and does annually close, a designated area of its property known as Moonstone Beach from April 1 to September 15 to protect the nesting habitat of piping plovers, an endangered shorebird. See generally, New England Naturist Ass'n v. Larsen, 692 F. Supp. 75 (D.R.I. 1988).[1] Defendant testified that he walked the beach that day and that he was approached by an FWS employee. I find that Ms. Durkin was such employee. The fundamental question in a trespass case such as this is where the boundary is, and did Defendant knowingly and intentionally cross that boundary. The area is posted with appropriate signage indicating that the beach is closed to protect endangered birds, and there is no question that Defendant was aware of the annual beach closure.

The primary area of dispute is the exact location of the seaward boundary or property line along the beach and exactly when and where Defendant encroached that boundary and unlawfully entered the closed area.

The boundary in question is the mean high water line. Ms. Durkin testified that the line is staked by FWS land surveyors annually prior to the April 1 beach closure. According to Ms. Durkin, the surveyors calculate and "literally walk on the mean high water line" and pound wooden stakes into the ground at unspecified intervals along the three-quarter-mile beach. (ECF No. 12 at p. 15). Ms. Durkin testified that these stakes were replaced by FWS with ten-foot high, six-inch diameter steel poles and that over the years people "generally understand" the point that the

---

[1] To the extent Defendant relies on R.I. Gen. Laws § 46-23-26, I find that the provision is preempted by federal law applicable to the protection of endangered species on federal property, and, in any event, the statute has been ruled an unconstitutional taking by the Rhode Island Superior Court in two well-reasoned and persuasive opinions. Roth v. State of RI, No. WC-2023-0440, 2024 WL 3488820 (R.I. Super. Ct. July 12, 2024); and Stilts, LLC v. State of R.I., No. WC-2023-0481, 2024 WL 3488823 (R.I. Super. Ct. July 12, 2024).

postings are boundary markings. Id. She indicated there were "20 plus posts" placed along the beach, so it is fair to say the poles are not close together. Id. at p. 23. Because of the impact of wave action, there are no ropes or other fencing to delineate the boundary from pole to pole along the shoreline. Id. at p. 22. This type of fencing is known as "symbolic" fencing intended as a visible but penetrable barrier to discourage encroachment. Id. at p. 28.

The problem with symbolic fencing in this context is that the mean high tide line is neither straight nor static. The surveyors' stakes mark the line at a particular point on the beach and at a particular point in time. Even when initially surveyed, the boundary line does not run straight between stakes because of the varying topography of the sandy beach. In addition, the boundary line is a function of the horizontal high tide height and the vertical beach face which is constantly impacted by wave action, storms, and the ebb and flow cycle of beach erosion and beach accretion. By its nature, the boundary is a crooked line, and the line marked prior to the April 1 beach closure is not in the exact same location as the line would have been on June 23.

Here, the testimony from both Ms. Durkin and Defendant place him within a few feet of the pole and thus in relative close proximity to this dynamic boundary line. If the evidence placed Defendant farther up the beach face in closer proximity to the dune or even the "wrack" or seaweed line, then the Government's burden of proving criminal trespass would be less challenging, but that is not the case.

**Conclusion**

The Government has not proven beyond a reasonable doubt that Defendant breached the mean high water boundary as it existed on June 23, 2024 and, where in particular, he did so. While it is possible to draw a reasonable inference that it is more likely than not that Defendant trespassed

on the day in question, the record does not support a finding beyond all reasonable doubt.[2]

Accordingly, I find Defendant not guilty of the petty offense charged in Violation Notice No. 9511867 issued on June 24, 2024.[3]

SO ORDERED

  /s/  Lincoln D. Almond
LINCOLN D. ALMOND
United States Magistrate Judge
December 30, 2024

---

[2] The Government relies, in part, on a picture of washed over footprints (Gov't. Exh. 3) taken a few hours after the alleged trespass. The picture is not persuasive because it does not show footprints between two poles to provide context and, since the beach was not monitored for the entire period in question, it is possible that a person other than Defendant left those prints.

[3] Although I have found Defendant not guilty, I do not condone his decision to "push the envelope" regarding this dynamic boundary line. The property in question is part of a national wildlife refuge, and the seasonal closure decision has been made by wildlife biologists entrusted with supporting the recovery of an endangered species. Finally, there are alternatives available. We are fortunate to live in a state with other beaches available for shoreline trekking and other non-beach public properties with marked and maintained hiking trails including at the Trustom Pond Refuge itself.